Opinion issued January 14, 2008









        




     




In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00366-CV




FRANK’S INTERNATIONAL, INC., Appellant

V.

SMITH INTERNATIONAL, INC., Appellee




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2004-65335




OPINION ON REHEARING



          Appellee, Smith International, Inc. (“Smith”), sued appellant, Frank’s
International, Inc. (“Frank’s”), for breach of contract and conversion, and the parties
filed cross-motions for summary judgment. Frank’s appeals from a summary
judgment rendered in favor of Smith on its breach of contract claim.


 In what we
construe as four issues, Frank’s contends that the trial court erred by (1) granting
Smith’s motion for summary judgment and denying


 Frank’s’ motion for summary
judgment,


 (2) granting declaratory relief not requested in Smith’s motion for
summary judgment, (3) denying Frank’s’ post-judgment motions, and (4) assessing
an incorrect rate of post-judgment interest.
          On June 28, 2007, we reversed and remanded for a trial on the merits. Smith
moved for rehearing. We grant the motion, withdraw our opinion dated June 28,
2007, and issue this opinion in its stead. Our disposition and judgment remain
unchanged.
          We reverse and remand for a trial on the merits.
Summary of Facts and Procedural History
           Smith, a Delaware corporation with its principal place of business in Texas,
and Frank’s, a Texas corporation with its principal place of business in Texas, are
both engaged in the provision of oilfield equipment and attendant services.
          On January 1, 2002, Smith and Frank’s entered into an “Overseas Consignment
and Servicing Agreement Ecuador” (the “First Agreement”), pursuant to which Smith
“rented” or “consigned” certain oilfield tools to Frank’s in Texas, which Frank’s, in
turn, “subleased” to end users in Ecuador through its wholly-owned subsidiary,
Frank’s International Ecuador, C.A. (“Frank’s-Ecuador”). Frank’s-Ecuador is
organized under the laws of Ecuador and has its principal place of business in
Ecuador.
          Article 1 of the First Agreement provided that
[Frank’s] shall be responsible for and shall handle the shipping of the
Tools, spare parts, and servicing equipment from Houston, Texas, to the
destination in [Ecuador]. [Frank’s] shall be responsible for and shall
handle the proper receipt at such destination and the importation into
[Ecuador] of any Tools, spare parts, and servicing equipment. In
addition, [Frank’s] shall bear and pay the cost of the import duties and
all other charges relating to such importation.
 
(Emphasis added.) 
          Article 7 provided that 
[Frank’s] shall retain twenty (20%) of the rental revenues, 50% of the
service charges and 10% of the list prices for the tools sold to END
USERS as a consequence of tools being damaged. . . . [Frank’s] will be
invoiced by [Smith] for 80% of the rental revenues, on a monthly basis
within the first ten (10) days of each month and 90% of the list price of
parts charged to END USERS within thirty (30) days of the loss. All
payments due [Smith] . . . shall be tendered at par, in U.S. dollars,
within forty-five (45) days from the date of [Smith’s] invoice. . . ,
provided that, if required by applicable law of [Ecuador], [Frank’s]
shall withhold such taxes assessed on [Smith] as a result of such
payments. Consistent herewith, [Frank’s] warrants that it shall tender
in a proper and timely manner all amounts so withheld to the applicable
governmental entity in [Ecuador] and supported by appropriate tax
receipts.
 
(Emphasis added.)
 
          Article 8, “Taxes,” provided that
each of [Smith] and [Frank’s] shall be responsible for its respective
taxes that may be assessed upon [sic] as a result of the income derived
by each pursuant to this Agreement, whether such taxes are assessed or
imposed by the government of [Ecuador] or by any other governmental
body or agency. Consistent herewith, each of the parties shall be
responsible for any other governmental taxes by whomsoever assessed
or levied as a result of its performance of this Agreement. 
 
          Frank’s states that, pursuant to Article 7, it withheld from the percentage of
revenues it paid to Smith certain taxes assessed on Smith by the government of
Ecuador and that Frank’s paid those sums to Ecuador. Smith states that in 2003 it
learned that Frank’s was withholding 25 percent of Smith’s invoiced amounts to
satisfy Smith’s purported tax obligations to Ecuador, and a dispute arose. Smith
contended that it did not owe taxes to Ecuador; rather, the taxes were assessed against
Frank’s and improperly withheld. 
          On August 1, 2003, Smith and Frank’s executed an amendment to the First
Agreement, pursuant to which Article 7 was deleted “in its entirety” and revised to
read as follows:
[Frank’s] will retain twenty-five (25%) of the rental revenues, fifty
(50%) of the service charges and ten percent (10%) of the list prices of
any parts sold to end users as a consequence of tools being damaged. . . .
[Frank’s] will be invoiced by [Smith] for seventy-five (75%) of the
rental revenues, on a monthly basis within the first ten (10) days of each
month, and ninety percent (90%) of the list price of parts charged to end
users within thirty (30) days of the date of loss.
          On January 1, 2004, a second “Overseas Consignment and Servicing
Agreement” (the “Second Agreement”) was executed directly between Smith and
Frank’s’ subsidiary, Frank’s-Ecuador.


 The parties agreed that the Second Agreement
“supersedes any and all prior agreements, negotiations, or understandings between
the parties and is the sole agreements [sic] between the parties with regards [sic] to
the matters described herein. The parties acknowledge that the [First Agreement] . . .
shall be cancelled, effective January 1, 2004.” (Emphasis added.) At the time of the
execution of the Second Agreement, Frank’s had withheld $207,874.90 under the
First Agreement to satisfy what Frank’s contended was Smith’s tax assessment in
Ecuador and, which Smith contended was a tax assessment against Frank’s and not
itself. 
          On November 17, 2004, Smith sued Frank’s under the First Agreement for
breach of contract, conversion, and a declaration that no taxes could have been owed
by Smith to Ecuador under the First Agreement such that Frank’s could have been
entitled to withhold payment from Smith. In May 2005, Smith moved for summary
judgment on its claims on the grounds that Frank’s expressly promised to pay Smith
certain revenues, that Smith fully performed its obligations under the First
Agreement, and that Frank’s had not paid $207,874.90 of Smith’s invoices. Smith
sought to recover this sum, as well as declaratory relief, pre- and post-judgment
interest, and costs. To support its motion, Smith attached the First Agreement, the
Amendment, the Second Agreement, and the affidavits of Mark Kosicki, senior
international tax manager for Smith; Don Pinkston, worldwide credit manager for
Smith; and Geoffrey H. Bracken in support of attorney’s fees.
          In August 2005, in its response to the motion for summary judgment, Frank’s
contended that Smith did not have a cause of action under the First Agreement
because that agreement had been expressly cancelled by the Second Agreement. In
addition, Frank’s contended that, because it was undisputed that Smith’s goods were
used in Ecuador, that Smith received revenues for such use, and that revenues earned
in Ecuador are subject to taxation by the government of Ecuador, there were genuine
issues of material fact regarding Smith’s obligations to pay taxes to Ecuador, such
that summary judgment was not proper. Frank’s also objected to the sufficiency of
Kosicki’s affidavit. As evidentiary support for its contentions, Frank’s attached to
its response the Second Agreement and the affidavit of its Chief Financial Officer,
Mark Margavio. 
          On September 29, 2005, Frank’s filed a cross-motion for summary judgment,
contending that Smith had no legal basis for a breach of contract claim because the
Second Agreement expressly cancelled the First Agreement. As evidentiary support,
Frank’s attached the First and Second Agreements.
          Smith filed a response to Frank’s’ motion for summary judgment, in which it
contended that Frank’s had misinterpreted the meaning of the word “cancel” and that
all parties understood that Smith was not waiving its prior claims by the execution of
the Second Agreement. Smith appended the evidence it had previously submitted
with its own motion for summary judgment.
          On January 27, 2006, after a hearing, the trial court granted partial summary
judgment for Frank’s, dismissing Smith’s conversion claim. On the same day, the
trial court granted summary judgment in favor of Smith on the breach of contract
claim and declared that Smith “could not and did not incur any foreign withholding
obligation under the parties’ January 1, 2002 agreement.” The trial court ordered that
Smith recover from Frank’s the principal amount of $207,874.90, pre-judgment
interest at 18% per annum from November 17, 2004 until the date of judgment, post-judgment interest at 18% per annum from the date of judgment until the date the
judgment is satisfied, and costs. The trial court stated that its judgment constituted
a final judgment. 
          On February 14, 2006, Frank’s moved for new trial and for leave to supplement
its summary judgment evidence. After a hearing, the trial court denied the motions.
In addition, Frank’s moved for a ruling on its August 2005 objections to Smith’s
summary judgment evidence. No order appears in the record. On April 11, 2006,
Frank’s moved to correct what it alleged was a clerical mistake in the rate of interest
stated in the judgment. This appeal ensued.Summary Judgment
          In what we construe as its first issue, Frank’s contends that the trial court erred
by granting Smith’s motion for summary judgment and denying Frank’s’ motion for
summary judgment as to Smith’s breach of contract claim. Specifically, in three sub-issues, Frank’s contends that no valid agreement exists to support Smith’s breach of
contract claim, that Smith’s affidavit evidence is insufficient, and that Frank’s raised
fact issues that precluded summary judgment. Frank’s asks this court to “reverse the
trial court’s judgment in favor of Smith and the order denying [Frank’s’] motion for
summary judgment and render judgment in favor of [Frank’s] dismissing Smith’s
claims.” In the alternative, Frank’s requests that we “reverse the trial court’s final
judgment and remand. . . for trial on the merits.”
A.      Standard of Review
          We review a trial court’s granting of a traditional summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). A
summary judgment under Rule of Civil Procedure 166a(c) is properly granted only
when a movant establishes that there are no genuine issues of material fact and that
it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
A plaintiff moving for summary judgment must prove that it is entitled to summary
judgment as a matter of law on each element of his cause of action. MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986); Rizkallah v. Conner, 952 S.W.2d 581, 582
(Tex. App.—Houston [1st Dist.] 1997, no pet.). A defendant moving for summary
judgment must either (1) disprove at least one element of the plaintiff’s cause of
action or (2) plead and conclusively establish each essential element of an affirmative
defense to rebut plaintiff’s cause. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
In deciding whether there is a disputed material fact precluding summary judgment,
evidence favorable to the non-movant will be taken as true, every reasonable
inference must be indulged in favor of the non-movant, and any doubts resolved in
its favor. Knott, 128 S.W.3d at 215. The movant must conclusively establish its right 
to judgment as a matter of law. See MMP, 710 S.W.2d at 60. A matter is
conclusively established if reasonable people could not differ as to the conclusion to
be drawn from the evidence. City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex.
2005).
          When, as here, both sides move for summary judgment and the trial court
grants one motion and denies the other, we review the summary judgment proof
presented by both sides and determine all questions presented. See CenterPoint
Energy Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied). 
B.      Analysis
          The essential elements of a breach of contract claim are (1) the existence of a
valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained as a result of the breach. 
Valero Marketing & Supply Co. v. Kalama Int’l, 51 S.W.3d 345, 351 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). 
          1.       Existence of a Valid Contract 
          In its first sub-issue, Frank’s contends that the trial court erred in granting
summary judgment in favor of Smith because Smith’s breach of contract claim is
based on a contract that no longer exists. Frank’s contends that the First Agreement,
upon which Smith sued, is no longer a valid agreement because it was cancelled and
superseded by the Second Agreement. Smith contends that its mere cancellation of
the First Agreement did not, without some mention of an intent by Smith to release
its claims, operate to discharge Frank’s’ liability for the breach that occurred prior to
the cancellation of the First Agreement. Frank’s responds that the act of cancelling
the First Agreement necessarily extinguished any claim that arose under that
agreement, without regard to Smith’s intent. Smith responds that Frank’s
misconstrues the meaning of the word, “cancel,” citing Black’s Law Dictionary, the
Texas Business and Commerce Code (“UCC”)


, and case law.


 
          Generally defined, “cancellation” means “annulment or termination of a
promise or an obligation.” See Black’s Law Dictionary 197 (7th ed. 1999). 
Pursuant to section 2.106 of the UCC, a “‘cancellation’ occurs when either party puts
an end to the contract for breach by the other.” See Tex. Bus. & Com. Code Ann.
§ 2.106 (Vernon 1994). As Smith contends, section 2.106 provides that, when a
contract is cancelled, “the canceling party retains any remedy for breach of the whole
contract or any unperformed balance.” See id. However, Chapter 2, entitled “Sales,”
governs only those contracts and agreements that involve “the present or future sale
of goods.” Id. “Goods” include all things moveable at the time of identification to
the contract. Id. at § 2.105. A “sale” consists of the passing of title from the seller
to the buyer, for a price. Id. at § 2.106.
          Here, pursuant to the First Agreement, which the parties titled a “Consignment
and Servicing Agreement,” the parties agreed that “OWNER [Smith] shall rent Tools
to CONSIGNEE [Frank’s]” and that “CONSIGNEE [Frank’s] shall sublease Tools
under CONSIGNEE’S responsibility to END USERS in ECUADOR.” (Emphasis
added.) The parties agreed that Frank’s was free to offer its own rental terms and
conditions in negotiating with end users, provided that any terms or conditions
offered by Frank’s were to be “based on,” and “no less favorable than,” Smith’s terms
and conditions. Pursuant to the agreement, Frank’s was required to report to Smith
each month concerning the specific tools “rented,” the name of the end user to whom
Frank’s “rented” the tools, the dates the tools were “rented,” and the “type of
rental”—whether “stand-by rental time” or “operating rental time.” 
          In addition, the parties agreed that “CONSIGNEE [Frank’s] shall provide
servicing for and repairs to the Tools within [Ecuador] and such other assistance to
OWNER [Smith] as otherwise described.” Furthermore, the First Agreement states
that “all tools and servicing equipment . . . are and shall always remain the property
of [Smith],” that Frank’s “shall always represent that the Tools, spare parts and
servicing equipment are the property of [Smith]” and that, in the event of any
termination of the agreement, Frank’s must return all tools and equipment to Smith. 
          Because the agreement expressly excludes any passage of title from a seller to
a buyer, we conclude that the First Agreement is not a contract for the sale of goods
within chapter 2 of the UCC. See id. Hence, as Frank’s contends, article 2.106 of the
UCC does not govern the First Agreement. The First Agreement, however, expressly
creates a contract for the rental and sublease of goods (tools). Section 2A of the
Business and Commerce Code, “Leases,” governs “any transaction, regardless of
form, that creates a lease of goods.” Tex. Bus. & Com. Code Ann. § 2A.102
(Vernon 1994). Hence, article 2A of the UCC applies to the First Agreement.
          However, pursuant to its terms, the First Agreement also constitutes a contract
for repair services. The UCC does not govern a contract for services; rather, such a
contract is governed by case law. Southwestern Bell Tel. Co. v. FDP Corp., 811 
S.W.2d 572, 574 (Tex. 1991). When, as here, a contract contains a mixture of goods
and services, a determination of which law, the UCC or case law, governs the contract
as a whole depends on whether the agreement is “predominantly” for the supply of
goods or “predominantly” for services. See Cont’l Casing Corp. v. Siderca Corp., 38
S.W.3d 782, 787 (Tex. App.—Houston [14th Dist.] 2001, no pet.). 
          The First Agreement provides that Smith will furnish certain servicing
equipment to Frank’s “free of charge” for the purpose of maintenance and servicing
of the rental tools while they are in Ecuador. The servicing of the tools appears
incidental to their rental. This conclusion is supported by the compensation structure
in the First Agreement and amendment, whereby the parties agreed that Smith would
invoice Frank’s for 75–80 percent of the “rental revenues” and only 50 percent of the
service charges to end users. We conclude that the First Agreement is predominantly
a contract for the lease of goods and thus the agreement is governed by Section 2A
of the UCC rather than by case law.
          Section 2A.505 of the UCC provides that,
           on cancellation of a lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or
performance survives, and the canceling party also retains any remedy
for default of the whole lease contract or any unperformed balance. 
Unless the contrary intention clearly appears, expressions of
“cancellation,” “rescission,” or the like of the lease contract may not be
construed as a renunciation or discharge of any claim in damages for an
antecedent default. 
Tex. Bus. & Com. Code Ann. § 2A.505. Here, pursuant to section 2A.505, the
cancellation of the First Agreement cannot be construed as a discharge of any right
belonging to either party based on an antecedent breach by the other unless such
intention clearly appears in the Second Agreement. See id. It is undisputed that the
Second Agreement is silent with regard to the discharge of any claims that arose prior
to the cancellation of the First Agreement. In order for Frank’s to prevail on this
issue, which was raised by Frank’s motion for summary judgment, Frank’s had the
burden to conclusively show that any rights Smith had to recover for a breach that
occurred prior to the cancellation of the First Agreement were retroactively
extinguished by the cancellation. Frank’s’ sole evidentiary support appended to his
motion for summary judgment on this point was the First and Second Agreements. 
It is undisputed that there is not any language with regard to intent as to antecedent
claims contained in this evidence. Hence, there is no merit to Frank’s first sub-issue.
          2.       Sufficiency of the Summary Judgment Proof

          In its second sub-issue, Frank’s contends that the affidavit of Mark Kosicki,
Smith’s senior international tax manager, which was Smith’s sole evidence of a
breach by Frank’s, is insufficient to support summary judgment on Smith’s breach of
contract claim because Kosicki’s affidavit is not based on personal knowledge and
because the affidavit is speculative and conclusory. 
          As evidentiary support for its motion for summary judgment, Smith attached
the First and Second Agreements, which demonstrated that a contract existed in
which Frank’s expressly agreed to pay Smith for rental revenues. In addition, Smith
appended the affidavit of Don Pinkston, worldwide credit manager for Smith, who
attested that Frank’s was “delinquent in the amount of $207,874.90.” Smith also
attached several invoices and billing statements. Frank’s has not disputed that Smith
fully performed its obligations under the First Agreement. Thus, Smith supported the
first, second, and fourth elements of its breach of contract claim. Frank’s contends
that Kosicki’s affidavit, which was Smith’s evidence as to the third element, that of
breach, is insufficient.
          Rule of Civil Procedure 166a(f) requires that “affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence,
and shall show affirmatively that the affiant is competent to testify to the matters
stated therein.” Tex. R. Civ. P. 166a(f). The record shows that Kosicki attested in
his affidavit that he is competent to testify, that the facts he sets out are based on his
personal knowledge, and that this knowledge derives from his status as a certified
public accountant, his employment as senior international tax manager for Smith, and
his personal familiarity with the First and Second Agreements and with the past and
present business relationship between Smith and Frank’s. Kosicki has satisfied the
requirement that “affidavits shall be made on personal knowledge” because he has
made an affirmative showing of how he became personally familiar with the facts. 
See Waite v. BancTexas–Houston, N.A., 792 S.W.2d 538, 540 (Tex. App.—Houston
[1st Dist.] 1990, no writ). Kosicki’s job responsibilities can qualify him to have
personal knowledge of the facts stated in the affidavit. See id.
          Frank’s also contends that Kosicki’s affidavit is speculative and conclusory
with regard to a breach by Frank’s of the First Agreement in withholding certain
payments to Smith to satisfy Ecuadorian taxes.


 In that regard, Kosicki attested as
follows, in pertinent part:
Article 7 of the [First Agreement] provides that, if required by the laws
of Ecuador (the “Territory”), [Frank’s] shall withhold from its payments
to Smith any taxes that are assessed on Smith as a result of Frank’s’
payments to Smith. This provision concerns foreign withholding taxes,
which are levied by governments upon revenues generated within the
foreign country by out-of-country companies. In this instance, if
revenues were generated in Ecuador, then a withholding tax of 25%
would be assessed by the government of Ecuador on the revenues
derived by the non-Ecuadorian entity to receive the income. 
 
As stated in the [First Agreement], Smith and [Frank’s] are both U.S.
companies. No part of the [First Agreement] is to be performed
anywhere other than in the U.S. It is my understanding that [Frank’s]
(the U.S. company) provided the consigned tools to its wholly-owned
subsidiary in Ecuador, [Frank’s-Ecuador]. Under these circumstances, 
[Frank’s] (the U.S. company) and [Frank’s-Ecuador] would be the two
companies engaging in activity in and payments out of Ecuador, not
Smith. Any foreign tax assessment would have been imposed on
[Frank’s], not Smith.
 
(Emphasis added.) Specifically, Frank’s challenges the emphasized language “it is
my understanding that” and “would have been imposed on” as speculative and
conclusory, and thus incompetent to support summary judgment. 
 
          Generally, a statement of subjective belief, which is not supported by other
summary judgment proof, is insufficient. Ryland Group, Inc. v. Hood, 924 S.W.2d
120, 122 (Tex. 1996). Statements must be “so direct and unequivocal that perjury
could be assigned against the affiant if the statement is false.” Draper v. Garcia, 793
S.W.2d 296, 300 (Tex. App.—Houston [14th Dist.] 1990, no writ). An affidavit
stated in terms of the affiant’s “understanding” of the “circumstances” or what
“would” happen constitutes mere speculation and has no probative force. See
Drennan v. Community Health Inv. Corp., 905 S.W.2d 811, 821 (Tex.
App.—Amarillo 1995, writ denied). In addition, conclusory statements in affidavits
are not competent evidence to support a summary judgment. Rizkallah, 952 S.W.2d
at 589. A conclusory statement is one that does not provide the underlying facts to
support the conclusion. Id. at 587. 
          The statement of Kosicki’s subjective belief, that his “understanding” was that
Frank’s was actually supplying tools to Frank’s-Ecuador and that, “under these
circumstances,” a tax “would have been imposed on Frank’s” are statements of
Kosicki’s opinions about a hypothetical scenario. As Frank’s contends, Smith does
not unequivocally, as is required, state what the circumstances were as a matter of
fact. See Draper, 793 S.W.2d at 300. 
 
          The issue then becomes whether Kosicki’s assertions are supported by other
factual statements in his affidavit that are sufficient to support Smith’s burden of
proof. See Rizkallah, 952 S.W.2d at 588. Kosicki does not unequivocally attest to
any facts that support his conclusion that the income Smith received from the rental
of its tools in Ecuador was not subject to Ecuadorian tax law.


 
          Smith’s other summary judgment evidence, namely, the Agreement,
demonstrates that the clear purpose of the Agreement between Frank’s and Smith,
which is entitled “Overseas Consignment and Servicing Agreement Ecuador,” was
to generate a stream of revenues from Ecuador, of which 80 percent of rental
revenues, 90 percent of parts, and 50 percent of services flowed back to Smith in the
United States.
          Article 7 of the Agreement states in pertinent part that all payments owed to
Smith would be timely tendered, “provided that, if required by the applicable law of
the Territory [Ecuador], [Frank’s] shall withhold such taxes assessed on [Smith] as
a result of such payments.” Had the parties contemplated that “[n]o part of the
Agreement [was] to be performed anywhere other than in the U.S.,” as Kosicki
attests, this portion of Article 7 would be meaningless. 
          Further, Article 8, which provides in pertinent part that “each of [Smith] and
[Frank’s] shall be responsible for its respective taxes that may be assessed upon [sic]
as a result of the income derived by each pursuant to this Agreement, whether such
taxes are assessed or imposed by the government of [Ecuador] or by any other
governmental body or agency,” also demonstrates that the parties contemplated that 
taxes may be imposed on Smith based on the income it derived under the Agreement
in Ecuador.
          Smith’s evidence does not demonstrate that Frank’s’ withholding of certain
sums from its payments to Smith to satisfy taxes owed to the government of Ecuador,
as contemplated under the Agreement, constituted a breach of the Agreement. Hence,
Smith’s summary judgment evidence is insufficient to support summary judgment on
Smith’s breach of contract claim.
          In its motion for rehearing, Smith contends that, even if Kosicki’s affidavit is
insufficient, the affidavit that Frank’s appended to its response to Smith’s motion for
summary judgment, that of Frank’s’ Chief Financial Officer, Mark Margavio, is
sufficient evidence of breach to support summary judgment on Smith’s breach of
contract claim. Frank’s did not move for summary judgment on the element of
breach. However, when, as here, both sides move for summary judgment and the trial
court grants one motion and denies the other, we review the summary judgment proof
presented by both sides and determine all questions presented. See Old TJC Co., 177
S.W.3d at 430. 
          In his affidavit, Margavio attests that “Ecuadorian law (First Title—Income
Tax, Section II—Withholding Tax for Payments Outside the Country, Article 105)”
provides in pertinent part as follows: 
Those who send, pay or credit on earned taxable income, either directly,
by means of compensation or with intercession of commercial firms
either to national or foreign firms or other intermediary, must retain and
pay 25% on the taxable part of the respective payment or credit in
account.
 
          Margavio attests that, as required, Frank’s and Frank’s-Ecuador were
“obligated and did charge to end users of [Smith’s] tools [Smith’s] rental rates and
charges, which were collected for [Smith] and remitted to [Smith] and in part to the
government of Ecuador.” In addition, Margavio attests that, pursuant to the
Ecuadorian law cited, which imposes a withholding tax on payments to foreign firms
on income earned in Ecuador, Frank’s retained 25 percent of its payment to Smith as
taxes and submitted such taxes directly to the government of Ecuador. Margavio
further attests that Frank’s made 18 payments to Smith from January 2003 to March
of 2004 and that these payments reflected withholding for taxes and commissions
owed to Ecuador; that Smith did not object that such payments constituted partial
payments; and that, of the $207,875.02 currently being sought by Smith, $205,527.04
was paid to the government of Ecuador and $2,347.98 was paid in commissions to
“IPM.” Margavio attests that Frank’s is not delinquent in the payment of any amount
to Smith and has paid in full all balances owed. Smith has not shown that Margavio’s
affidavit constitutes evidence that Frank’s breached the Agreement by withholding
taxes from the amounts paid on Smith’s invoices. 
          In sum, we conclude that Smith has failed to meet its burden to prove that it is
entitled to summary judgment as a matter of law on each element of its cause of
action. See MMP, 710 S.W.2d at 60; Rizkallah, 952 S.W.2d at 589.
          Accordingly, we sustain Frank’s’ second sub-issue.
CONCLUSION

          We overrule Frank’s’ first sub-issue, that there was not a valid agreement in
existence to support Smith’s breach of contract claim, because Frank’s failed to meet
its burden to conclusively show that any rights Smith had to recover for a breach that
occurred prior to the cancellation of the First Agreement were extinguished by the
cancellation. We sustain Frank’s’ second sub-issue, that Smith failed to meet its
burden to prove that it is entitled to summary judgment as a matter of law on each
element of its cause of action. Having sustained Frank’s’ second sub-issue, we do not
reach the remaining issues presented on appeal. We reverse the trial court’s judgment
and remand for further proceedings. 


 
 
                                                             Laura Carter Higley 
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Higley.