Opinion issued February 20, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00325-CV

————————————

## MASOUD SANATI, Appellant

## V.

## KAMRAN ARAB N/K/A KAMRAN ARMANI AZAR, Appellee

On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 1091270

## MEMORANDUM OPINION ON REHEARING

Appellee Kamran Arab N/K/A Kamran Armani Azar ("Kamran") sued appellant Masoud Sanati for $50,000, the principal amount due on a promissory note. Sanati maintained that the case was more complicated than a typical suit on a promissory note because the men had known each other for decades and had been

involved in other business ventures. Sanati pleaded the affirmative defense of offset, arguing that he had made excess monthly payments to Kamran related to the $50,000 promissory note and that the overpayment should have been applied to the principal indebtedness. Sanati also asserted counterclaims for breach of contract, quantum meruit, and fraud, all relating to other alleged dealings between the men. The trial court granted summary judgment in favor of Kamran, and Sanati appealed.

Sanati raised three issues on appeal, arguing that the trial court erred by granting traditional summary judgment on Kamran's claim (issues 1 and 2), and that the court erred by granting a no-evidence summary judgment as to his counterclaims (issue 3).

We originally issued our memorandum opinion in this appeal on July 2, 2019. Kamran filed a motion for rehearing. We grant the motion for rehearing. We withdraw our opinion and judgment of July 2 and issue this opinion and judgment in their stead.

We affirm the trial court's judgment.

**Background**

Sanati and Kamran had been acquainted for 40 years in 2012, when Kamran transferred $50,000 to Sanati. According to the terms of a promissory note dated May 20, 2012, the $50,000 was a one-year loan from Sanati's "old friend" Kamran to be used in his "business venture." The promissory note required Sanati to pay

$475 in monthly interest payments for twelve months and a balloon payment of the principal amount of the loan, $50,000, on May 19, 2013. Sanati is identified as the borrower in the signature block, which also identified two witnesses and provided spaces for their signatures.

Sanati began making $475 monthly payments in June 2012. These monthly payments continued through February 2017, but Sanati did not make a lump sum payment of $50,000. In March 2017, Kamran sued Sanati for breach of contract, breach of implied contract, and unjust enrichment. Kamran also sought attorney's fees and pre- and post-judgment interest.

Sanati answered, pro se, with a general denial and verified denials, specifically denying that he had signed the promissory note and that there was no consideration for the note. Sanati also pleaded the following affirmative defenses: (1) official mistake; (2) election of remedies; (3) res judicata and collateral estoppel; (4) statute of limitations and laches; (5) offset; (6) offset by counterclaim; (7) waiver; and (8) accord and satisfaction.

In September 2017, Kamran filed a traditional motion for summary judgment on his claims. His summary judgment evidence included his affidavit and an unsigned copy of the promissory note. The trial court did not rule on this motion for summary judgment, and in November, Sanati filed counterclaims for breach of contract, fraud, and quantum meruit.

Sanati alleged that in May 2012, Kamran asked him for assistance in making investments of at least $500,000 in the United States so that he could qualify for permanent residency. Sanati maintained that he offered Kamran an opportunity to buy his 50% interest in a restaurant and negotiated with his partner to allow the sale to proceed. However, the sale did not proceed because, according to Sanati, Kamran "insisted on a 51% interest for no additional consideration."

Sanati also alleged that he offered Kamran a real estate investment opportunity. Sanati stated that he owned a building company that had successfully developed unimproved property into profitable residential units. He averred that he found an unimproved parcel of land on Anita Street in Houston, and he offered to develop it into three townhouses and share the profit with Kamran. Sanati alleged that Kamran paid for the land by giving his brother Kambiz Aubon money to pay for it. Kambiz then acquired the property in the name of Aubon Property, an entity created by Kambiz's daughter, Delara Aubon, for the purpose of the project. According to Sanati, Kambiz and Delara "represented themselves as agents" for Kamran. Sanati alleged that after he had expended time and money on preliminary development work, Kamran decided not to proceed. He alleged a lost opportunity of approximately $78,000.

In January 2018, Kamran filed another traditional motion for summary judgment as to his claims and a no-evidence motion for summary judgment as to

4

Sanati's counterclaims. His summary judgment evidence consisted of: (1) his affidavit, in which he averred that Sanati had not made the $50,000 balloon payment that was due in April 2013 and that after "allowing all offsets, credits, and payments, there is due and owing to me on the contract $50,000.000 plus interest;" (2) a signed copy of the May 2012 promissory note; (3) an email chain from May 2012 regarding Sanati's receipt of the money; (4) bank records showing the monthly $475 payments that Sanati made from June 2012 through February 2017; and (5) an attorney's fees affidavit. In the no-evidence motion, Kamran specifically challenged each element of each of Sanati's counterclaims.

In response, Sanati argued that material questions of fact precluded summary judgment because the parties' dispute was "not a simple case of a promissory note and the loan of $50,000.00." Rather, he characterized it as "a five year course of dealing" and asserted that Kamran actually was liable to him. Sanati's summary judgment evidence included his affidavit in which he averred:

> As for the $50,000.00, I do not recall signing the note attached to Plaintiff's Petition. I was not given a copy of that document. I therefore cannot verify the authenticity of that document. I did agree to compensate Plaintiff for holding his money, and paid him $5,700 dollars for that purpose. I also paid him additional funds, totaling $28,000.00. I was under the understanding that $22,000.00 was to be applied to principal.

Sanati's affidavit also addressed the other investment opportunities that he had discussed with Kamran: the purchase of an interest in a restaurant and the Anita

Street real estate development. Sanati also provided an email chain relating to the proposed Anita Street real estate development and an investment agreement, which was not signed by Kamran. Sanati attached an email from Kamran that referenced the Anita Street real estate investment and requested payment of the $50,000 or alternatively offered to extend the terms of the loan.

Sanati also attached an affidavit from Kamran's brother, Kambiz, who averred that he, Delara, Kamran, and Sanati had discussed jointly participating in the Anita Street real estate development opportunity. He averred that Kamran gave him $120,000 to invest in the project. Kambiz, Delara, and Sanati began work on the project and incurred expenses. However, according to Kambiz, Kamran "refused to sign any contracts, refused paying of any expenses, and demanded the property be deeded to him personally." Finally, Sanati attached letters from two nonparties regarding Kamran's personal reputation and the failed restaurant sale.

The trial court granted summary judgment in favor of Kamran, awarding him $50,000 plus pre- and post-judgment interest and attorney's fees. The court also impliedly granted the no-evidence motion for summary judgment as to Sanati's counterclaims.

## Analysis

Sanati raises three issues on appeal. In his first two issues he challenges the granting of Kamran's traditional motion for summary judgment. He argues that there

6

were genuine issues of material fact and that the court did not view the evidence in a light favorable to him as the nonmovant. In his third issue, he contends that the trial court erred by granting Kamran's no-evidence motion for summary judgment because there were genuine issues of material fact.

## I. Sanati's summary judgment evidence raised a question of fact about the amount owed on the $50,000 loan.

We review summary judgments de novo. *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018). A movant for traditional summary judgment must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Wendt v. Sheth*, 556 S.W.3d 444, 448 (Tex. App.—Houston [1st Dist.] 2018, no pet.). To determine whether there is a genuine question of material fact, disputed evidence that is favorable to the nonmovant will be taken as true, and every reasonable inference will be indulged and any doubt resolved in favor of the nonmovant. *See Nixon*, 690 S.W.2d at 548–49.

"When the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law." *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). A matter is conclusively proved if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* A nonmovant can defeat a plaintiff's motion for summary judgment on his own claim by coming forward with evidence

7

that creates a genuine question of material fact as to an affirmative defense that has been pleaded by the nonmovant. *Id.*

The affirmative defense of offset, which is sometimes called "payment" or "credit," refers to a debtor's right to have payments to the obligee credited against the total amount owed. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Mathis v. Benavides*, No. 04-15-00555-CV, 2016 WL 3020893, at *5 (Tex. App.—San Antonio May 25, 2016, pet. denied) (mem. op.). The party asserting offset has the burden of proving facts necessary to support it. *Brown*, 601 S.W.2d at 936; *Mathis*, 2016 WL 3020893, at *5. To raise the defense, evidence must include factual allegations showing specific amounts paid and that the payments were made in satisfaction of the debt sued upon. *See Colony Flooring & Design, Inc. v. Regions Bank*, No. 01-13-00210-CV, 2014 WL 2021823, at *5 (Tex. App.—Houston [1st Dist.] May 15, 2014, no pet.) (mem. op.); *see, e.g.*, *Life Ins. Co. of Va. v. Gar–Dal, Inc.*, 570 S.W.2d 378, 381–82 (Tex. 1978) (conclusory affidavit stating that payments had not been credited toward a debt did not raise fact issue regarding offset); *Stucki v. Noble*, 963 S.W.2d 776, 781–82 (Tex. App.—San Antonio 1998, pet. denied) (checks showing payments of amount owed under note did not raise fact issue regarding offset because the checks were not properly authenticated).

Kamran's summary judgment evidence included the promissory note, which specifically provided for a monthly interest payment of $475 per month, to be paid on the 20th day of each month. It also said:

> I, Masoud Sanati, confirm the receipt of $50,000 loan on 20 May 2012 from my old friend Kamran [Arab] for a period of ONE YEAR which it will be used in my business venture. I promise to pay him an interest of $475 in arrears on 20th day of each month, every month until 19 May 2013, when I will include the principal loan of $50,000 to clear our account.

Kamran's summary judgment evidence also showed that Sanati paid $475 each month from June 2012 through February 2017, but that no payment of $50,000 had been made.

Sanati did not dispute that he had not made a final balloon payment of $50,000, but he did dispute that he still owed Kamran $50,000. In addition to pleading general and verified denials that he had signed the promissory note, he pleaded several affirmative defenses, including offset, waiver, and accord and satisfaction. After Kamran filed his second motion for summary judgment, Sanati argued that the parties' dispute went beyond the promissory note due to their five years of business dealings. Sanati acknowledged having received the $50,000, but he argued that the $28,000 that he had paid Kamran represented payments of both interest and principal. In Sanati's sworn affidavit, he stated: "I did agree to compensate [Kamran] for holding his money, and paid him $5,700 dollars for that

9

purpose. I also paid him additional funds totaling $28,000.00. I was under the understanding that $22,000.00 was to be applied to principal."

On original submission, we concluded that this was some evidence of offset that raised a question of fact to defeat summary judgment. In his motion for rehearing, Kamran argued that Sanati's affidavit was no evidence of offset because it states only his subjective understanding that the money would be credited toward payment of the principal. "Generally, a statement of subjective belief, which is not supported by other summary judgment proof, is insufficient." *Frank's Int'l, Inc. v. Smith Int'l, Inc.*, 249 S.W.3d 557, 566 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996)). "An affidavit stated in terms of the affiant's 'understanding' of the 'circumstances' or what 'would' happen constitutes mere speculation and has no probative force." *Frank's Int'l*, 249 S.W.3d at 566.

Sanati averred: "I was under the understanding that $22,000.00 was to be applied to the principal." This is a statement of his understanding of the circumstances and what would happen, and thus it is mere speculation that does not raise a genuine question of material fact.[1] *See id.* We overrule Sanati's first issue.

---

[1] Kamran also argues on rehearing that the payment of the $22,000 was not evidence of offset because interest on the loan continued to accrue after the note matured in 2013. "When a note specifies a rate of interest before maturity, but is silent about any rate after maturity, the pre-maturity rate is implied as the post-maturity rate as a matter of law." *Briscoe v. Goodmark Corp.*, 130 S.W.3d 160, 168 (Tex. App.—

10

## II. Sanati's stated challenge to the summary-judgment evidence is waived.

In his brief, Sanati states as his second issue: "The trial court erred because it applied an improper standard of review for the summary judgment evidence provided by the parties." His brief does not provide a "clear and concise argument" supporting this contention "with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1 We overrule his second issue as inadequately briefed. *See* TEX. R. APP. P. 38.1; *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

## III. Sanati's summary judgment evidence did not raise a question of fact on his counterclaims.

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). A party may move for no-evidence summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. TEX. R.

---

El Paso 2003, no pet.) (citing *Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668, 668–69 (Tex. 1984). ("[W]hen a note specifies a rate of interest before maturity, but is silent about any rate after maturity, the law implies that the pre-maturity rate continues after maturity.")). We need not address this argument because we conclude that Sanati's affidavit was merely speculative on the issue of offset.

CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.* "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks*, 206 S.W.3d at 582.

Sanati asserted counterclaims for breach of contract, common law fraud, and quantum meruit. These causes of action arise from the investment deals that Sanati alleged he had worked on for or with Kamran to help him establish permanent residency. But his summary judgment evidence did not support each element of each of these causes of action. For example, although Sanati's summary judgment affidavit discusses the inception of their working relationship, it does not establish that the men had a contract. *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (elements of breach of contract include existence of a valid contract); *cf. Sewing v. Bowman*, 371 S.W.3d 321, 329 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (citing TEX. BUS. & COM. CODE § 26.01(a), (b)(4)) ("The statute of frauds requires that a promise, agreement, or contract for the sale of real property be in writing and signed by the party to be charged with the promise or agreement.").

12

Similarly Sanati's fraud claim was not supported by his summary judgment evidence because he did not aver that Kamran made any material false representation on which he relied to his detriment. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)) (elements of fraud include the making of a false and material representation). Sanati averred that he offered an investment opportunity to Kamran, that Kamran agreed to a profit-sharing split, that Kamran gave money to his brother, and that Kamran later decided not to proceed with the project after preliminary work had been done. Whether Kamran agreed to go forward with this opportunity is not specifically mentioned. Sanati averred that he accepted Kambiz and Delara's representations that they were operating on behalf of Kamran due to their familial ties, but he did not aver that Kamran represented that Kambiz and Delara were his agents. Thus, there was no evidence that Kamran made a false and material representation on which Sanati relied to his detriment.

Finally Sanati's summary judgment evidence did not support his claim for quantum meruit. A claimant seeking to recover under a theory of quantum meruit must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing

13

such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018). Sanati averred that he performed valuable services toward development of the Anita Street project. Yet his affidavit describes a joint venture in which he would share in profits above the costs of development, not a circumstance in which he expected to be paid for his services. Sanati averred: "Plaintiff further agreed that I could have 50% of the profit above cost as a compensation for finding the project, as well as architectural, engineering platting services and necessary permitting." Taking Sanati's affidavit as true, all that Kamran could have agreed to do was to share the profits with Sanati, not to pay him for labor and services rendered.

Because Sanati's summary judgment proof was not sufficient to raise a question of fact on each element of each of his counterclaims, the trial court did not err by granting Kamran's no-evidence summary judgment motion on Sanati's counterclaims. *See* TEX. R. CIV. P. 166a(i). We overrule the third issue.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.