**Opinion issued April 3, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00740-CV

————————————

**ALBERT LUJAN D/B/A TEXAS WHOLESALE FLOWER COMPANY,**
**Appellant**

**V.**

**NAVISTAR FINANCIAL CORPORATION, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-35191**

---

## O P I N I O N

Appellee, Navistar Financial Corporation ("NFC"), filed a breach of contract suit against appellant, Albert Lujan *d/b/a* Texas Wholesale Flower Company ("Lujan"), alleging that he had defaulted on the loan NFC had issued him to

finance the purchase of his truck fleet. Lujan asserted the affirmative defense of duress or business coercion. Both parties moved for summary judgment, and the trial court granted summary judgment in favor of NFC. Lujan contends on appeal that the trial court erred: (1) and (2) in denying his motion for summary judgment and in granting NFC's motion for summary judgment because he proved each element of his duress or business coercion affirmative defense as a matter of law; (3) in granting NFC's motion for summary judgment because "there is no controverting evidence and therefore no genuine issues of material fact regarding [his] duress and business coercion affirmative defense"; and, alternatively, (4) in granting NFC's motion for summary judgment because he raised genuine issues of material fact regarding his duress or business coercion affirmative defense.

We affirm.

## Background

NFC is a wholly-owned subsidiary of Navistar, Inc. Navistar manufactures vans, and NFC finances the sale of those vans. Lujan's business sells and delivers flowers and floral products. The business requires vans with refrigeration units that can regularly drive long distances. Lujan purchased five 4300M LP vans from NFC in March 2007, and NFC held a purchase money security interest in those vehicles. Lujan financed the purchase of the vehicles through a Commercial Loan and Security Agreement ("the Agreement") entered into with NFC. Additionally,

2

Lujan executed a personal guaranty along with the Agreement. The Agreement also contained a choice of law provision stating that the law of Illinois "and applicable federal law" controlled the construction and validity of the Agreement and that the "validity and enforcement of the security interest granted hereunder shall be controlled by the law of the jurisdiction where the [vehicles] are to be kept and used."

Lujan defaulted on the loan, and NFC repossessed and sold the 4300M LPs according to the terms of the Agreement. Under the Agreement, Lujan was responsible for the net deficiency after the sale of the vehicles. Lujan did not pay the deficiency, which was between $31,000 and $35,500 for each vehicle.

On June 13, 2011, NFC sued Lujan for breach of contract, alleging that he had breached the Agreement and that NFC had suffered damages totaling nearly $170,000 plus interest. NFC also sought attorney's fees pursuant to Civil Practice and Remedies Code section 38.001. Lujan filed his original answer, entering a general denial. He did not plead the affirmative defense of duress or business coercion at that time.

On December 16, 2011, NFC moved for traditional summary judgment. NFC argued that Lujan had originally breached the Agreement by failing to pay in accordance with its terms. Accordingly, NFC had repossessed the trucks and sold them at a private sale after giving Lujan the required notice, and it had provided

him with notice of the deficiency amounts for each vehicle following the repossession of his truck fleet. NFC further argued that Lujan had breached the Agreement by failing to pay the deficiencies in accordance with the Agreement's terms.

Accompanying NFC's motion for summary judgment was the affidavit of Tim Majchrowicz, a "Loss Recovery Specialist" for NFC. Majchrowicz averred that Lujan owed $198,258.64, "[a]fter allowing all just and lawful offsets, credits, and payments," and that "[t]he Note has not been pledged, assigned, transferred, or conveyed." Along with Majchrowicz's affidavit, NFC also provided copies of the Agreement and guaranty executed by Lujan, notices of acceleration sent by NFC to Lujan regarding past-due amounts on his loan, notices that NFC intended to sell the repossessed trucks in a private sale and that Lujan would be liable for any deficiency remaining following the sale, and notices of the deficiency amounts following the sale of the truck fleet. NFC also provided the affidavit of its counsel regarding the amount of attorney's fees, including numerous billings reflecting the amount of attorney's fees NFC had incurred.

On February 24, 2012, Lujan amended his answer, alleging, in relevant part, that the Agreement had he made with NFC was the product of duress or business coercion. At this time, he did not file a response to the motion for summary

4

judgment or produce any summary judgment evidence supporting his allegations of duress or business coercion.

On March 2, 2012, the trial court granted NFC's motion for summary judgment and ordered Lujan to pay damages to NFC on the breach of contract claim, as well as paying NFC's attorneys' fees.

Lujan filed a motion for rehearing, arguing that the court should reexamine its summary judgment decision in light of his affirmative defense of duress or business coercion. On April 9, 2012, Lujan filed an amended motion for rehearing, an affidavit supporting his affirmative defense, and a motion for summary judgment on his affirmative defense. In his motion for summary judgment, Lujan alleged in a conclusory manner that Illinois law was applicable in the case because that was what the loan documents provided. He also cited an Illinois case for the definition of duress, and he referred to the allegations in his affidavit to support his motion.

In his affidavit, Lujan set out the facts for his affirmative defense. He averred that in December 2005, following a sales call from Rick DeNolf, who Lujan asserted was an employee of Navistar, Lujan purchased five CF600 vans that were covered by a warranty for thirty-six months or 150,000 miles. Lujan stated that the CF600s broke down regularly, but they were towed and repaired, and DeNolf or his dealership, Santex, provided a loaner vehicle in accordance with the

warranty. In February 2007, DeNolf approached Lujan about replacing the CF600 vans with another model, the 4300M LPs. Lujan averred that he was hesitant to replace the CF600s because the 4300M LPs would cost more. Regarding DeNolf's representations, Lujan averred:

> Finally, he said to me, bottom line, they were done. They would no longer provide warranty support for my CF600 fleet. They would cease to honor warranty obligations and other commitments to my CF600 fleet, although the warranties otherwise would be in effect through December 2008. DeNolf said I would have full responsibility for breakdowns, including towing, repair and substitute delivery trucks during the repair period.

Lujan further stated that the warranty made the fleet serviceable, and without it, his business would be severely affected. He averred that "one of the trucks was in the shop when the threat was made" and that he was able to make his Valentine's Day deliveries only because he had the use of a loaner van. He also stated that he did not have "immediate legal recourse that would compel compliance with the warranty obligations." Lujan stated that, through this alleged pressure, NFC forced him to buy five 4300M LPs.

Lujan attached as an exhibit to his affidavit a copy of the "Limited Standard Warranty for Medium Duty CF500/CF600 Series" vehicles that he averred was given to him by DeNolf at the time he purchased the CF600s. The warranties provided for "limited warranty coverage" for thirty-six months or 150,000 miles, and it provided warranties for various components for periods ranging between six

and forty-eight months. The warranty excluded coverage of "repairs and maintenance" or "vehicle misuse, negligent care, improper maintenance, [or] improper operation" and numerous other conditions.

NFC filed objections to Lujan's motions for rehearing and summary judgment as well as a response to Lujan's motion for rehearing. The trial court granted Lujan's motion for rehearing and stated that it would "reconsider [NFC's] motion for summary judgment and [Lujan's] cross-motion for summary judgment." Upon consideration of the motions for summary judgment, the trial court found that there were no genuine issues of material fact, that NFC had conclusively established each element of its cause of action, that Lujan had failed to submit sufficient summary judgment evidence to raise a fact issue as to each element of his affirmative defense, and that NFC was entitled to judgment as a matter of law. Again, the court ordered Lujan to pay damages on the breach of contract claim as well as attorney's fees.

Lujan filed a supplemental motion for summary judgment and a motion for new trial. The trial court did not rule on these motions, and the motion for new trial was overruled by operation of law. This appeal followed.

**Standard of Review**

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848

7

(Tex. 2009). To prevail on a traditional motion for summary judgment, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

"[S]ummary judgments must stand or fall on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). The standards for reviewing a motion for summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubt resolved in its favor. *Id.* at 549.

When the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied) (citing TEX. R. CIV. P. 166a(c)); *see also* TEX. R. CIV. P. 166a(a)

(holding that party seeking to recover upon claim may, at any time after adverse party has appeared or answered, move for summary judgment). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 643–44 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)).

When a defendant moves for traditional summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

If the movant meets its burden as set out above, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq*, 899 S.W.2d at 197. To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. *Lunsford Consulting Grp., Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475–76 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994)). He must

9

come forward with evidence sufficient to raise a genuine issue of material fact on each element of his affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we render the judgment that the trial court should have rendered. *Fielding*, 289 S.W.3d at 848.

### NFC's Right to Summary Judgment

Lujan challenges the trial court's summary judgment in favor of NFC on its claim that Lujan breached the Agreement by failing to pay as agreed.

To be entitled to summary judgment on its claim, NFC was required to show, as a matter of law: (1) the existence of a valid contract; (2) its performance or tender of performance; (3) breach of the contract; and (4) damage as a result of the breach. *See Wincheck v. Am. Express Travel Related Servs., Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)); *see also Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("To recover on a promissory note, the plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note.").

Here, NFC moved for summary judgment on the basis that Lujan had breached the Agreement by failing to pay the deficiency following NFC's repossession of his truck fleet. Accompanying its motion was the affidavit of Tim Majchrowicz, a "Loss Recovery Specialist" for NFC. Majchrowicz averred that Lujan owed $198,258.64, "[a]fter allowing all just and lawful offsets, credits, and payments," and that "[t]he Note has not been pledged, assigned, transferred, or conveyed." Majchrowicz's affidavit was supported by copies of the Agreement and guaranty executed by Lujan, notices of acceleration sent by NFC to Lujan regarding past-due amounts on his loan, notices that NFC intended to sell the

11

repossessed trucks in a private sale and that Lujan would be liable for any deficiency remaining following the sale, and notices of the deficiency amounts following the sale of the truck fleet. NFC also provided the affidavit of its counsel regarding the amount of attorney's fees, including numerous billings reflecting the amount of attorney's fees NFC had incurred.

Thus, NFC established the existence of the Agreement that was signed by Lujan, its own tender of performance and Lujan's subsequent breach by failing to pay in accordance with the Agreement, and its damages in the amount of the unpaid balance, interest, and attorney's fees. *See Dorsett*, 389 S.W.3d at 613; *Wincheck*, 232 S.W.3d at 202. We conclude that NFC conclusively proved all elements of its breach of contract claim against Lujan as a matter of law. *See Kyle*, 232 S.W.3d at 358.

The burden then shifted to Lujan to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty*, 899 S.W.2d at 197. Lujan could defeat NFC's motion for summary judgment by coming forward with evidence sufficient to raise a genuine issue of material fact on one essential element of NFC's claim or on each element of his affirmative defense, requiring remand for trial. *See Centeq*, 899 S.W.2d at 197 (holding that to defeat plaintiff's entitlement to summary judgment, nonmovant must raise material fact issue as to one essential elements of plaintiff's claim); *Haskell*, 193 S.W.3d at 95 (holding

12

that defendant seeking to defeat motion for summary judgment by raising affirmative defense must raise genuine issue of material fact on each element of defense). Or, Lujan could defeat NFC's motion for summary judgment and establish his own entitlement to summary judgment by pleading and proving every element of his affirmative defense. *See* TEX. R. CIV. P. 166a(b); *see also Cathey*, 900 S.W.2d at 341 (holding that defendant may establish right to summary judgment by pleading and conclusively establishing each element of affirmative defense, thereby defeating plaintiff's cause of action).

### Lujan's Right to Relief Based on His Affirmative Defense

Lujan does not challenge NFC's construction of the Agreement or any of the evidence presented by NFC in support of its motion for summary judgment. Nor does he challenge the amount of damages awarded by the trial court or the award of attorney's fees. Rather, Lujan argues, in part, that he presented evidence raising a genuine issue of material fact on his affirmative defense of duress or business coercion that precludes summary judgment in NFC's favor. *See Haskell*, 193 S.W.3d at 95. NFC argues, and the trial court ruled, that Lujan failed to create a fact issue on each element of his affirmative defense. We agree.

Lujan asserted the affirmative defenses of "duress" and "business coercion" in his motion for summary judgment. "In Texas, the term 'duress' rather than

13

'coercion' is generally used when parties are seeking to avoid a contract."[1] *Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 367 (Tex. App.—Houston [14th Dist.] 2013, pet. filed); *see also Wright v. Sydow*, 173 S.W.3d 534, 543–44 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("Generally, when one coerces another to execute a contract by taking undue or unjust advantage of the person's economic necessity or distress, the contract may be invalid or unenforceable. This legal theory is called economic duress."). "A common element of duress in all its forms (whether called duress, implied duress, business compulsion, economic duress or duress of property) is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Dallas*

---

[1]     Lujan argues in his brief on appeal that Illinois law applies to this case. NFC argues that Lujan failed to make a proper request that the trial court take judicial notice of Illinois law on this issue or present proper proof that Illinois law was applicable, and, thus, we may presume that Illinois law is the same as Texas law. *See* TEX. R. EVID. 202 (providing procedure for determination of law of other states); *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.) (holding that "a preliminary motion must be filed asking the court to apply another state's law" and that "in the absence of a request to take judicial notice or proper proof that the law of another state is applicable, Texas courts presume a sister state's laws are the same as Texas law"); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied) (stating that party requesting judicial notice of applicability of another state's law must furnish sufficient information to enable court to properly comply with request). We observe, however, that, according to the case cited by Lujan, Illinois law, like Texas law, requires a "wrongful act or threat of another to make a contract under circumstances which deprive[s] [the victim] of his free will" to establish economic duress. *See Kaplan v. Kaplan*, 182 N.E.2d 706, 709 (Ill. 1962). Thus, the outcome of this case would be the same regardless of whether we applied Texas or Illinois law on this issue.

*Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878–79 (Tex. 2005). To meet his burden to raise a fact issue on NFC's claims or prevail on his motion for summary judgment on his affirmative defense, Lujan had to establish that NFC threatened to do an act that it had no legal right to do. *See id.*; *Wright*, 173 S.W.3d at 544 (listing elements of economic duress, which include "a threat to do something a party has no legal right to do").

Here, Lujan presented his own affidavit that DeNolf, who he asserted was an employee of Navistar, NFC's parent company, told him that

> they would no longer provide warranty support for my CF600 fleet. They would cease to honor warranty obligations and other commitments to my CF600 fleet, although the warranties otherwise would be in effect through December 2008. DeNolf said I would have full responsibility for breakdowns, including towing, repair and substitute delivery trucks during the repair period.

Lujan attached to his affidavit a generic copy of warranty provisions covering his CF600 fleet. These warranty provisions included numerous limitations and exceptions to coverage. Lujan provided no supporting evidence that DeNolf was an employee of Navistar or NFC, that anyone at NFC made any threat to Lujan, that any specific repairs sought were actually covered by the terms of the warranty, or that NFC or Navistar actually refused to complete work covered by the warranty. The record contains no evidence by which the trial court or this Court could have determined the nature of Navistar's legal obligations under the CF600 warranty, much less that NFC made an unlawful threat that it would not fulfill

15

those obligations.  Nor does the record contain any evidence, other than Lujan's conclusory statements in his affidavit, of the relationship between DeNolf, his purported employer, Navistar, and NFC.  *See* TEX. R. CIV. P. 166a(f) (affidavit testimony that is conclusory, speculative, hearsay, or not based on personal knowledge is not competent summary judgment evidence); *see also Lunsford Consulting*, 77 S.W.3d at 475–76 (holding that nonmovant must do more than just plead affirmative defense to defeat summary judgment by raising that defense).

We hold that Lujan failed to raise a genuine issue of material fact concerning whether NFC made a threat to do something it had no legal right to do.  *See Bolton*, 185 S.W.3d at 878–79; *Wright*, 173 S.W.3d at 544.  Thus, Lujan failed to defeat NFC's entitlement to summary judgment by raising his affirmative defense.  *See Brownlee*, 665 S.W.2d at 112 (holding that party opposing summary judgment by relying on affirmative defense "must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment"); *Haskell*, 193 S.W.3d at 95 (holding same).  Nor did he raise a genuine issue of material fact as to an essential element of NFC's cause of action. *See Centeq Realty*, 899 S.W.2d at 197 (holding that once movant establishes right to summary judgment, plaintiff must present evidence sufficient to raise fact issue precluding summary judgment).

Lujan also argued that he was entitled to summary judgment based on his affirmative defense because he proved each element of his affirmative defense as a matter of law, thereby defeating NFC's cause of action against him. *See* TEX. R. CIV. P. 166a(b); *Cathey*, 900 S.W.2d at 341. We have held that Lujan failed to raise a genuine fact issue on even one element of his affirmative defense. It follows, therefore, that he failed to establish his own entitlement to summary judgment by pleading and proving every element of his affirmative defense. *See Cathey*, 900 S.W.2d at 341.

We conclude that the trial court properly granted summary judgment in favor of NFC and denied Lujan's motion for summary judgment.

We overrule Lujan's issues on appeal.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

17