**Affirmed and Memorandum Opinion filed May 10, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00415-CV

### INNAD H. HUSAINI, Appellant

### V.

### PAWNEE LEASING CORP., Appellee

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1137782**

## MEMORANDUM OPINION

Appellee Pawnee Leasing Corp. ("Pawnee") filed suit against appellant Innad H. Husaini ("Husaini") for breach of contract. In what we construe as two issues, Husaini argues that the trial court erred by: (1) granting Pawnee's motion for summary judgment when there is a genuine issue of material fact on his impossibility and mitigations defenses; and (2) granting summary judgment before discovery was completed. We affirm.

# I.   BACKGROUND[1]

On March 22, 2019, Pawnee entered into a leasing agreement with Verimed Medical Health & Wellness Clinic, Inc. ("Verimed") and Husaini; the lease concerned a neural-scan medical device valued at $42,538.12. Verimed, the lessee, contracted to pay Pawnee $1,378.78 per month for use of the neural-scan device, which included a laptop, software, and several electrode sensors. Husaini signed the contract as a guarantor.

In April 2019, the U.S. government raided Verimed because of allegedly false Medicare claims—totaling over $1,000,000—filed by Verimed's previous office manager. Much of Verimed's property was seized by the government, including the neural-scan device leased by Pawnee. Because of the property seizures, Verimed was unable to continue business operations.

On July 22, 2019, Pawnee filed suit against Verimed and Husaini for breach of contract. Pawnee's petition demanded Verimed and Husaini pay the outstanding balance of $61,352, but Verimed and Husaini refused to pay. Furthermore, Pawnee asserted that the neural-scan device remained in Verimed and Husaini's possession. Pawnee also sought $20,450 in attorney's fees. Verimed and Husaini filed an answer generally denying Pawnee's claim, asserting various affirmative defenses, including failure to mitigate damages, and requested damages and attorney fees.

On September 3, 2019, Pawnee filed a traditional motion for summary judgment on its breach of contract claim. Verimed and Husaini filed a response to Pawnee's motion, arguing that their performance under the contract was excused because (1) the government's seizure of the equipment was a force majeure that

---

[1] Adequate time has passed, but Pawnee has not filed an appellate brief.

made it impossible for them to perform under the contract; (2) Pawnee was aware that the equipment was in the government's possession; (3) seizure of Pawnee's equipment was an unforeseeable event; (4) Verimed could not anticipate its employee's criminal conduct; (5) Pawnee cannot determine damages until after the equipment is returned by the government because the equipment was never used; (6) the claim for damages in the full contractual amount of $61,352.02 was improper because Pawnee could mitigate its damages after the equipment was released by the government; (7) Pawnee failed to detail the basis for the award of attorney's fees; and (8) there is no provision in the contract to recover a one-third attorney contingency fee. An affidavit by Husaini was attached in support of Verimed and Husaini's response to Pawnee's summary judgment motion.

On March 5, 2020, Verimed filed a Suggestion of Bankruptcy. On March 6, 2020, Pawnee withdrew its motion for summary judgment as to Verimed, informing the court that it would continue its claims only against Husaini. Husaini filed a supplemental response to summary judgment, asserting genuine issues of material fact exist to defeat the motion for summary judgment based on impossibility of performance and an unforeseeable supervening act, and again disputed attorney fees.

By way of response, Pawnee waived its request for legal fees and argued that none of the arguments advanced by Husaini were relevant because Husaini is a guarantor under the contract.

On March 10, 2020, a hearing was conducted on Pawnee's motion for summary judgment.[2] On April 23, 2020, the trial court granted Pawnee's motion, awarding Pawnee $61,352.02, plus interest and court costs. Husaini filed a timely appeal.

---

[2] The court reporter has informed us that no reporter's record was made in this case.

## II.   ANALYSIS

In two issues, Husaini argues that the trial court erred in granting Pawnee's motion for summary judgment, asserting there were genuine issue of material fact and discovery was not completed, and that the trial court erred in awarding Pawnee $61,352.02 in damages without considering Pawnee's duty to mitigate damages. We address Husiani's arguments regarding the duty to mitigate and his defenses, before turning to what we construe as his issue regarding discovery.

### A.   STANDARD OF REVIEW

We review the granting of a traditional motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). In a traditional motion for summary judgment, the movant has the burden to show both that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Once the movant meets its burden, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact; if the non-movant raises a fact issue, summary judgment is not appropriate. *See Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 905 (Tex. App.— Houston [14th Dist.] 2016, no pet.); *Ayeni v. State*, 440 S.W.3d 707, 709 (Tex. App.—Austin 2013, no pet.). "To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. He must come forward with evidence sufficient to raise a genuine issue of material fact on each element of his affirmative defense." *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal quotations omitted).

All evidence favorable to the non-movant must be taken as true, and all reasonable doubts must be resolved in non-movant's favor. *See City of Keller v.*

4

*Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## B.    APPLICABLE LAW

"[I]mpossibility is a defense to a cause of action for breach of contract." *Internacional Realty, Inc. v. 2005 RP W., Ltd.*, 449 S.W.3d 512, 527 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.,* 118 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (observing that Texas has recognized impossibility of performance, commercial impracticability, and frustration of purpose as related, if not identical, excuses for non-performance under a contract). "Where . . . a party's performance is made impracticable . . . by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged." *Internacional Realty*, 449 S.W.3d at 527 (quoting *Centex Corp. v. Dalton,* 840 S.W.2d 952, 954 (Tex. 1992)); *see Tractebel Energy*, 118 S.W.3d at 66 ("Because courts cannot simply rewrite the parties' contract, the excuse is limited to circumstances in which both parties held a basic (though unstated) assumption about the contract that proves untrue.").

The following are general, non-exhaustive contexts in which the defense of impossibility may be applicable: (1) the death or incapacity of a person necessary for performance; (2) the destruction or deterioration of an item necessary for performance; and (3) government regulation prevents performance. *See Tractebel Energy*, 118 S.W.3d at 66; *see also* Restatement (Second) of Contracts § 261 (1981). "Generally, impossibility excuses a party's breach of contract when the contract itself doesn't provide an escape clause and the doctrine's other

5

requirements are satisfied." *See Tractebel Energy*, 118 S.W.3d at 66. A party relying on the defense of impossibility must also demonstrate that it made reasonable efforts to overcome the obstacle to performance. *See id.*

The party seeking to excuse its performance under a contractual force majeure clause—in the present case, Husaini—bears the burden of proof to establish that defense. *See Virginia Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also Moore v. Jet Stream Invs., Ltd.,* 261 S.W.3d 412, 420 (Tex. App.—Texarkana 2008, pet. denied). In interpreting a force majeure provision in a contract, our primary concern is to determine the parties' intent. *See Zurich Am. Ins. v. Hunt Petrol. (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The failure to mitigate damages is also an affirmative defense. *See Zimmerman Truck Lines, Inc. v. Pastran*, 587 S.W.3d 847, 862 (Tex. App.—El Paso 2019, no pet.); *see also Haddad v. JP Morgan Chase Bank, N.A.*, No. 01-20-00283-CV, 2021 WL 5056651, at *7 (Tex. App.—Houston [1st Dist.] Nov. 2, 2021, pet. denied) (mem. op.). A party to a contract has a duty to mitigate damages if it can do so "at a trifling expense or with reasonable exertions." *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995); *see Kartsotis v. Bloch*, 503 S.W.3d 506, 522 (Tex. App.—Dallas 2016, pet. denied) ("The party raising the failure to mitigate defense must prove lack of diligence as well as the amount by which the damages were increased as a result of the failure to mitigate."); *see also Haddad*, 2021 WL 5056651, at *7.

## C. APPLICATION

### 1. Impossibility/Force Majeure

Husaini first argues that the trial court erred in granting summary judgment

because there are genuine issues of material fact concerning Husaini's defense of impossibility of performance under the contract. According to Husaini, the criminal acts of the previous office manager and the subsequent government seizure of Verimed's property, including the neural-scan device, constituted a force majeure that prevented Husaini from performing under the contract. All cases discussing the excusal of performance due to a force majeure do so in the context of a contract that contains a force majeure clause. *See, e.g.*, *MRC Permian Co. v. Point Energy Partners Permian LLC*, 624 S.W.3d 643, 657 (Tex. App.—El Paso 2021, pet. filed) ("'Force majeure' is a term that describes a particular type of event which may excuse performance under a contract. It is a contract provision that courts must construe to ascertain the parties' intentions based on the language the parties ultimately agreed upon."); *Virginia Power Energy*, 297 S.W.3d at 402 ("As we interpret the parties' contract, including the *force majeure* provisions, our primary concern is to determine the parties' intent."); *Zurich Am. Ins.*, 157 S.W.3d at 466 ("Regardless of its historical underpinnings, the scope and application of a force majeure clause depend on the terms of the contract."); *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 283 (Tex. App.—Amarillo 1998, pet. denied) ("Force majeure, is now little more than a descriptive phrase without much inherent substance. Indeed, its scope and application, for the most part, is utterly dependent upon the terms of the contract in which it appears.").

In the present case, the agreement does not contain a force majeure clause; based on the terms of contract, Husaini's performance cannot be excused due to force majeure. *See Virginia Power*, 297 S.W.3d at 402. Similarly, Husaini has not raised sufficient facts to demonstrate that his performance is excused under the general principle of impossibility. Assuming Husaini's allegations are true, none of the facts he asserted in his defense make performance impossible or impracticable.

7

Additionally, none of the general applications of impossibility apply to the present case: there is no death of a person that is essential to performance, there has been no destruction of property rendering performance impossible, and there have been no laws enacted that prevent Husaini from performing. *See Tractebel Energy*, 118 S.W.3d at 66. Stated differently, Husaini simply argues that the government's seizure makes performing under the contract financially more difficult now than when the agreement was originally enacted, but that is not sufficient to excuse performance. *See Philips v. McNease*, 467 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("John's performance cannot be excused simply because it has become economically burdensome."). Therefore, we conclude that Husaini failed to raise a genuine issue of material fact regarding his impossibility defense. *See Lujan*, 433 S.W.3d at 704. Summary judgment was proper on this point. *Merriman*, 407 S.W.3d at 248.

## 2. Failure to Mitigate Damages

Husaini also argues that the trial court erred in granting summary judgment because he raised genuine issues of material fact regarding Pawnee's alleged failure to mitigate damages. Crediting Husaini's allegations as true, the government was soon ready to release the neural-scan device back to Husaini. Additionally, according to Husaini, the neural-scan device was still brand new and had not been used, claiming that Pawnee could have easily leased or resold to mitigate damages. Instead, Husaini asserts that Pawnee rejected the offer to take back the neural-scan device, which improperly increased the value of the contract from $42,538.12 to $61,352.02. But these allegations are vague and speculative. Husaini is arguing that Pawnee might have been able to mitigate damages at an unspecified time in the future, but Husaini also acknowledges that the government was still presently in possession of the medical device and there is no indication of

8

a date when the government would release the device. Pawnee cannot take back the device from Husaini to mitigate damages if the government decides not to release the device. Likewise, Husaini asserts that Pawnee could resell the device or lease it to another clinic to mitigate damages; but again, Pawnee cannot resell or lease a device that the government does not release. Thus, Husaini did not raise a fact issue concerning whether forcing Pawnee to wait for an indefinite period of time to recover its device from the government is simply a trifling expense. *See Great Am. Ins*, 908 S.W.2d at 426.

### 3. Unconditional Guaranty

We also find that it is worth noting that Husaini did not respond to Pawnee's argument at the trial court in its amended motion for summary judgment—that none of Husaini's arguments are relevant because Husaini is a guarantor on the contract.

"A guaranty is a promise to a creditor by a third party to pay a debt on behalf of a principal in the event that the principal defaults on the original obligation." *See Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 246–47 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978)). To support a claim for breach of a guaranty, a party must show proof of (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor. *Chahadeh*, 519 S.W.3d at 246.

"The law recognizes two distinct types of guaranty: a guaranty of collection (or conditional guaranty) and a guaranty of payment (or unconditional guaranty)." *Id.* (quoting *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no pet.)). A guaranty of collection is an undertaking of

the guarantor to pay if the debt cannot be collected from the primary obligor by the use of reasonable diligence, and requires the lender to pursue the principal debtor before collecting. *See id.* In contrast, a guaranty of payment is an obligation to pay the debt when due if the debtor does not, and requires no condition precedent to its enforcement against the guarantor other than a default by the principal debtor. *Id.* Unlike a guarantor of collection, a "guarantor of payment is *primarily* liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty." *Id.* (emphasis supplied).

Here, the contract includes a guaranty, stating: "[i]f [Verimed] defaults, you will immediately pay in accordance with the default provisions of the Agreement. . . . You agree that we do not have to proceed first against [Verimed]" and "You unconditionally promise to repay the Equipment Cost." These terms indicate that Husaini signed an unconditional guaranty: Pawnee demonstrated the existence of a guarantee contract; that Verimed defaulted on its payment; and that Husaini, as the guarantor, failed to perform. Pawnee proved that it was entitled to recover as a matter of law, and Husaini raised no issues of material fact to challenge Pawnee's claims. Thus, we conclude that Husaini failed to raise genuine issues of material fact concerning his affirmative defense of failure to mitigate and his obligation to pay the unconditional guaranty. *See City of Keller*, 168 S.W.3d at 824; *Great Am. Ins.*, 908 S.W.2d at 426.

We conclude that Husaini failed to raise genuine issues of material fact concerning his affirmative defense of failure to mitigate and his obligation to pay the unconditional guaranty. *See City of Keller*, 168 S.W.3d at 824; *Great Am. Ins.*, 908 S.W.2d at 426. We overrule Husaini's first issue.

### 4.    Discovery

In what we liberally construe as Husaini's third issue, Husiani argues the

10

trial court erred in granting Pawnee's amended motion for summary judgment because "discovery was not completed" and because the granting of the summary judgment denied Husiani the opportunity to conduct discovery.[3]

We first note that while a motion for no-evidence summary judgment may only be granted after an "adequate time" for discovery has passed, traditional motions for summary judgment are not subject to the same restriction. *See* Tex. R. Civ. P. 166a ("A party . . . may, at any time after the adverse party has appeared or answered, move . . . for a summary judgment."); *Reynolds v. Murphy*, 188 S.W.3d 252, 258 n.8 (Tex. App.—Fort Worth 2006, pet. denied). Even when a party files a motion for continuance to allow for additional discovery, the trial court is not required to grant it. *See Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 292 n.142 (Tex. 2004).

Here, however, Husiani failed to preserve his discovery argument for appellate review. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. Proc. 166a(c). In order to preserve error for appeal, a party must first bring the complaint to the trial court's attention through a timely objection, ruling, or motion so that the trial court has an opportunity to correct the error. *See* Tex. R. App. P. 33.1(a)(1); *Sorrow v. Harris County Sheriff*, 622 S.W.3d 496, 510 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (Spain, J., concurring) ("To complain about an error on appeal, a party must preserve its complaint in the trial court."). More importantly, "[w]hen a party contends that it has not had an adequate opportunity for discovery before a summary judgment

---

[3] Husaini does not cite to any authority and does not provide us with any citations to the record to support this argument. However, where reasonably possible, we construe briefs liberally so as not to dispose of issues without reaching the merits. *See Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex. 2008); *Reule v. M & T Mortgage*, 483 S.W.3d 600, 608 (Tex. App.— Houston [14th Dist.] 2015, pet. denied). Therefore, we will address this issue.

11

hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *see* Tex. R. Civ. P. 166a(g). Husaini did neither. Accordingly, Husaini waived this complaint. We overrule Husaini's second issue.

## III. CONCLUSION

We affirm the judgment of the trial court.



/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.