# NO. 12-24-00111-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REBECCA DE LA ROSA AND CESAR DE LA ROSA,*<br>*APPELLANTS* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JASON MATTHEW AVERY AND WIFE, KACIE HOPE AVERY,*<br>*APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rebecca De La Rosa and Cesar De La Rosa (collectively Appellants) appeal the trial court's summary judgment entered in favor of Appellees Kacie Hope Avery and Jason Matthew Avery (collectively the Averys). In one issue, Appellants argue that the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding enforceability of the waiver-of-reliance clause in the release. We affirm.

## BACKGROUND

On February 26, 2020, Heston Avery decided to play a prank on A.D.L.R., a friend who came to his house to visit. In so doing, he pointed a shotgun at A.D.L.R. Heston did not believe the shotgun was loaded when he pulled the trigger. The shotgun was, in fact, loaded. It fired. A.D.L.R. later died from his wounds.

Robert Avery, Heston's grandfather, gave Heston the shotgun in 2015, when Heston was twelve or thirteen-years-old and living in Temple, Texas. Because Heston's parents, the Averys,

1

would not allow him to keep the shotgun at their house, Robert kept the gun at his home until the Averys and Heston moved to Joaquin, Texas in late 2018, at which point Robert gave it to Heston to take with him.

Appellants filed the instant suit against Heston, the Averys, and Robert. As to the Averys, Appellants alleged that they were negligent in allowing Heston to possess the shotgun used to kill A.D.L.R. because they knew or should have known that, due to his youth, inexperience, immaturity, reckless nature, complex developmental trauma, attention deficit disorder, and/or other factors, Heston likely would use the shotgun in a manner involving unreasonable risk of harm to himself or others. Appellants similarly alleged that Robert was negligent in that he gave Heston the shotgun.

After settling and dismissing their case against Robert, Appellants agreed to settle their claims against the Averys for $25,000. Appellants signed a release and an agreed judgment, by which Appellants' case against the Averys was dismissed with prejudice on July 27, 2022. Their suit against Heston, the sole remaining defendant, continued.

Thereafter, Appellants received discovery responses comprising twelve pages of documents from Miracle Farm, Inc., a residential boys ranch Heston attended between 2018 and 2019. Appellants' counsel notified Robert's counsel that this discovery proved that Robert gave false and incomplete deposition testimony and untruthful interrogatory answers. He further suggested in this letter that Appellants reasonably relied on Robert's sworn testimony and discovery responses in making their decision to settle the case against him, none of the information revealed in the Miracle Farm documents was part of settlement negotiations, and they believed that the "boilerplate" settlement and release were procured by Robert's fraud and fraudulent inducement. Appellants' counsel further related that Appellants asked him to take "all appropriate legal actions against [Robert] and Miracle Farm, Inc., including recission of the settlement agreement and release and a separate lawsuit to recover actual and punitive damages." Appellants' counsel subsequently sent an email to the Averys' trial counsel with this letter to Robert's counsel as an attachment. In the email, Appellants' counsel stated, "Please see attached letter to [Robert's attorney] as it is relevant to our case also."

Soon thereafter, the Averys intervened in the still-pending suit between Appellants and Heston and sought a declaratory judgment that the agreed take-nothing judgment and release are binding upon Appellants, final, and serve to conclude the litigation between the parties.

Subsequently, they filed a traditional motion for summary judgment, in which they argued that Appellants' claims were barred by res judicata and, further, that they were entitled to a declaratory judgment that the release and agreed, final, take-nothing judgment bars Appellants from seeking recission of the release and final judgment. Appellants responded, and, ultimately, the trial court granted the Averys' motion for summary judgment and severed the cause between Appellants and the Averys from their suit against Heston.

Appellants appealed to this court. *See De La Rosa v. Avery*, No. 12-23-00140-CV, 2023 WL 7173993, at *1 (Tex. App.–Tyler Oct. 31, 2023, no pet.) (mem. op.). In that appeal, we agreed with Appellants that res judicata did not apply and, further, held that the Averys were not entitled to summary judgment with regard to the "waiver-of-reliance" provision in the release because they failed to make any argument in their motion for summary judgment in support of such a finding. *See id.* at *3, 5. We rejected Appellants' remaining arguments and reversed the cause in part for further proceedings consistent with our opinion.[1] *See id.* at *8.

On remand, the Averys filed their first amended petition in intervention for declaratory relief, in which they sought a declaration that the settlement agreement and release are valid and binding on Appellants. Thereafter, the Averys filed a motion for summary judgment. Appellants responded and argued, in part that the waiver-of-reliance clause in the release is invalid because there are genuine issues of material fact regarding whether, during settlement negotiations, the parties discussed the issue which became the topic of the subsequent dispute. Ultimately, the trial court granted the Averys' motion for summary judgment, and this appeal followed.

## RELEASE - WAIVER-OF-RELIANCE PROVISION

In their sole issue, Appellants argue that the trial court erred in granting summary judgment because there is a genuine issue of material fact regarding enforceability of the waiver-of-reliance clause in the release. Specifically, they argue that the summary judgment evidence supports that there were genuine issues of material fact regarding whether, during settlement negotiations, the parties discussed the issue which became the topic of the subsequent dispute.

---

[1] Robert also intervened and sought a declaratory judgment that the partial take-nothing judgment and release are binding upon Appellants, final, and serve to conclude the litigation between the parties. The trial court granted summary judgment in Robert's favor and issued a severance order as to his declaratory-judgment action. Appellants appealed and based on the merits of the "waiver-of-reliance" provision in the release, we affirmed the trial court's judgment. *See De La Rosa v. Avery*, No. 12-23-00112-CV, 2023 WL 7178022, at *4–7, 9 (Tex. App.–Tyler Oct. 31, 2023, no pet.) (mem. op.).

**Standard of Review**

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.– Houston [1st Dist.] 2014, no pet.). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* Once the movant establishes a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). The only question is whether an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c).

When reviewing summary judgments, we perform a de novo review of the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952); *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.–Tyler 2008, pet. denied).

**Governing Law**

Texas law encourages parties to resolve their disputes by agreement, but settlement agreements—like all other contracts—are unenforceable if they are procured by fraud. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). To establish such fraudulent inducement, a party seeking to invalidate an agreement must prove that it reasonably relied on the other party's misrepresentations to its detriment. *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019); *Italian Cowboy*, 341 S.W.3d at 337 (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)). Because after-the-fact protests of misrepresentation easily are lodged, parties who mutually desire to resolve all disputes and buy complete and final peace often include provisions in their settlement agreements

expressly disclaiming any reliance on each other's representations. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008); *see also Transcor Astra Group S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 473 (Tex. 2022).

The law must balance society's interest in protecting parties against fraudulently induced promises with its interest in enabling parties to "fully and finally resolve disputes between them." *Schlumberger*, 959 S.W.2d at 179. To achieve this balance, we have held that contractual disclaimers of reliance may be enforceable and may negate a subsequent fraudulent-inducement claim if the disclaimer is clear, specific, and unequivocal. *See Lufkin*, 573 S.W.3d at 229; *Italian Cowboy*, 341 S.W.3d at 336; *Forest Oil*, 268 S.W.3d at 60; *Schlumberger*, 959 S.W.2d at 179. Whether a reliance disclaimer is effective in any given case "depends on the contract's language and the totality of the surrounding circumstances." *Lufkin*, 573 S.W.3d at 226; *Forest Oil*, 268 S.W.3d at 60; *Schlumberger*, 959 S.W.2d at 179. Specifically, courts must consider whether:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations, the parties specifically discussed the issue which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other at arm's length;
>
> (4) the parties were knowledgeable in business matters; and
>
> (5) the release language was clear.

*Forest Oil*, 268 S.W.3d at 60.

In considering these factors, our ultimate purpose is to determine whether the contract clearly confirms that "the parties intended once and for all to resolve specific disputes." *Italian Cowboy*, 341 S.W.3d at 335; *see also Forest Oil*, 268 S.W.3d at 58; *Schlumberger*, 959 S.W.2d at 181. As to the first factor, when parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, we generally will uphold the contract. *See Transcor Astra Group S.A.*, 650 S.W.3d at 475. Ultimately, the question is whether the circumstances and nature of the parties' settlement discussions demonstrates that the parties considered the consequences of the reliance disclaimer in light of the material issues of the dispute, which supports the conclusion that an "all-embracing disclaimer of any and all representations" actually shows the parties' clear intent. *Id.*

## Discussion

In the instant case, Appellants contend that the waiver-of-reliance provision[2] is ineffective and unenforceable. In support of their argument, they do not contend that the terms of the contract were "boilerplate" or that they were not represented by counsel, nor do they dispute that they dealt with the Averys at "arm's length," that they were not knowledgeable in business matters, or that the release language was unclear. Instead, they only argue that, based on the summary judgment evidence, there were genuine issues of material fact regarding whether, during settlement negotiations, the parties discussed the issue which became the topic of the subsequent dispute. In support of their motion for summary judgment, the Averys included numerous emails between the parties, which memorialize their negotiations, and which ultimately resulted in the settlement agreement and release at issue.[3]

Appellants' counsel initiated these settlement negotiations by an email dated June 23, 2022, in which he stated, in pertinent part, as follows:

Thank you for your call last week to discuss this case and the possibility of resolving the claims against your clients, Kacie Avery and Jason Avery. Subsequent to our call, **I discussed the case at length with my clients, Rebecca De La Rosa and Cesar De La Rosa**, and was given the authority to settle all claims against only your clients . . . for $150,000.00. This **offer is primarily based on the representation that there is no applicable insurance to cover the losses sustained** by the De La Rosa's due to the shooting death of their son, Angel De La Rosa by Heston Avery, the then minor son of Kacie and Jason. The offer does not apply to the claims against Heston Avery.

**As you may know, a parent may be directly liable to a third party when the parent negligently permits the child to act in a manner likely to cause injury to another. Such negligence may be shown where the parent entrusts a child with a dangerous instrumentality or carelessly fails to restrain a child known to have dangerous tendencies** [citations omitted].

**Robert D. Avery, Heston's grandfather[,] who gave him the shotgun involved in the shooting, has testified that the shotgun was a dangerous instrumentality.** This is also common knowledge. **Heston was allowed to keep the shotgun, as well as the ammunition for it, together in his room. Heston was a troubled child[,] who should not have been given unrestricted access to the shotgun.** We, therefore, believe that there is a good chance that Kacie and Jason will be found responsible for the shooting death of Angel De La Rosa. Please relay this settlement offer to your clients and give me a response by July 5, 2022.

---

[2] Specifically, the provision states, "Claimants are not relying upon any statement or representation of the Parties Released, or of any agent or servant of the Parties Released, but is [sic] relying upon their own judgment[.]"

[3] Some of these emails simply referred to attachments consisting of more formal letters addressed to the email recipient. For ease of reference, we refer to these communications as emails, regardless of whether the communications took place in the body of the email or within the attachment thereto.

(emphasis added). The record reflects that, after further negotiations, the parties agreed to settle the matter for $25,000.00. Thereafter, numerous emails were exchanged to negotiate the language in the release and settlement agreement.

In the emphasized portions of Appellants' counsel's email, he sets forth the material issues of the dispute as they relate to his clients' willingness to settle. He further notes that he discussed the case at length with his clients and they are motivated primarily by the Averys' lack of insurance coverage. He next discusses the Averys' liability for their minor son based on their entrusting him with a dangerous instrumentality and cites Robert's testimony that he provided Heston with the shotgun, which he admitted was a dangerous instrumentality. Lastly, he points out that Heston was allowed by the Averys to keep the shotgun and ammunition in his room. He punctuates this last statement with the assertion that "Heston was a troubled child[,] who should not have been given unrestricted access to the shotgun."

This final statement encapsulates Appellants' pivotal allegations in their live pleadings at the time these settlement negotiations transpired, i.e.,

> [the Averys] were negligent in allowing Heston to possess the shotgun used to kill A.D.L.R. because they knew or should have known that, due to his youth, inexperience, immaturity, *reckless nature, complex developmental trauma, attention deficit disorder, and/or other factors*, Heston likely would use the shotgun in a manner involving unreasonable risk of harm to himself or others.

(emphasis added).

The basis of Appellants' argument that they were fraudulently induced to enter into the release and settlement agreement is that Kacie Avery lied in her responses to interrogatories with regard to whether Heston (1) ever had been expelled or suspended from any school or disciplined by any organization outside of his home for any reason, (2) had been treated or counseled for drug or alcohol abuse or for any other reason, (3) was on any medication in 2019 or 2020 for any mental disorder, behavioral, addictive, or anti-social disorder or conviction, or (4) received counseling at Miracle Farm residential ranch. As support for this contention, they summarize in their response to the Averys' motion for summary judgment excerpts from the documents received in discovery from Miracle Farm[4] after they settled the case with the Averys. Kacie's interrogatory responses,

---

[4] Appellants do not cite to the summary judgment record in their response to support the existence of these excerpts from the Miracle Farm records. *See* TEX. R. CIV. P. 166a(c); ***Kotzur v. Kelly***, 791 S.W.2d 254, 257 (Tex. App.–Corpus Christi 1990, no writ) (when reviewing summary judgment proof, trial court is required to consider all

in essence, painted Heston as having no discernible problems which would cause them to believe that he could not be entrusted with a firearm. Appellants contend that the Miracle Farm records support their allegations because they demonstrate that Heston had numerous disciplinary issues, took medication for certain mental-health or behavioral issues, had issues with both alcohol and marijuana, and had various other issues from which a factfinder could conclude that he should not have been entrusted with a firearm. But ultimately, as it relates to their sole issue, the conflicting nature of these records only serves to emphasize what the pleadings and summary judgment evidence demonstrate about Appellants' counsel's suppositions at the outset of settlement negotiations: Heston was a troubled child, who should not have been given unrestricted access to the shotgun, and his mother had not been truthful about his troubles in her discovery responses on that point. This contested fact ultimately became the issue in the subsequent dispute between the parties.

Appellants also contend that the statement in their June 23 email is not specific enough to demonstrate that this issue was discussed. *See* **Forest Oil**, 268 S.W.3d at 60 (setting forth that parties specifically must discuss issue which has become topic of subsequent dispute); *but see* **Transcor Astra Group S.A.**, 650 S.W.3d at 475 (when parties expressly discuss *material issues* during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, court will uphold contract).[5] We disagree. *See* **Transcor Astra Group S.A.**,

---

summary judgment evidence on file with court, provided relevant party expressly identifies in its motion or response all supporting evidence on file which it seeks to have considered by the trial court). Based on our review of the record, these documents do not appear in the summary judgment record in the proceedings on remand. Because Appellants offered no citation to the summary judgment record, the trial court could not rely on the Miracle Farm records in ruling on the Averys' motion for summary judgment. *See* TEX. R. CIV. P. 166a(c); **Kelly**, 791 S.W.2d at 257. Furthermore, we cannot consider any summary judgment evidence that was not properly before the trial court. *See* **Chappell v. Allen**, 414 S.W.3d 316, 321 (Tex. App.–El Paso 2013, no pet.) (scope of appellate review is limited to summary judgment record upon which trial court's ruling was based). In their brief, Appellants' citation to the appellate record in reference to these documents directs us to an exhibit to the Averys' motion for summary judgment filed in 2023, before the first appeal to this court. Ultimately, while we may not consider the document as summary judgment proof, Appellants' failure in this regard does not alter the outcome of this appeal. We reference the Miracle Farm records to explain the basis of Appellants' argument that these records conflict with Kacie Avery's interrogatory responses. Whether the records, in fact, conflict with her responses is of little value in our analysis of Appellants' sole issue.

[5] Even assuming arguendo that more specific discussions are required, the outcome would not change. The same attorney who represented Appellants in this case also represented them during their settlement negotiations with Robert. In an email dated January 3, 2023, by which he initiated those negotiations, Appellants' counsel averred,

> Miracle Farm is not a place for boys that have problems paying attention in class. It is a residential ranch ministry for boys that "have experienced complex developmental trauma that profoundly impacts them, leading to disconnected relationships, risk-taking behavior, poor decisions, low school performance, and criminal behavior." Heston was at Miracle Farm for these reasons and others, which directly relate to the shooting of [A.D.L.R.].

650 S.W.3d at 475. Appellants' counsel's characterization of Heston as a "troubled child" not only embodies the theory of his case against the Averys but also is couched in such certainty as to call into doubt any prior assertion to the contrary made by any other party to the wrongful-death case. Thus, we conclude that the summary judgment evidence before the trial court conclusively demonstrates that Appellants, through their counsel, expressly communicated about a material issue in the case—the contested allegation that Heston was a troubled child, who should not have been given unrestricted access to the shotgun—the later-discovered proof of which forms the basis of Appellants' claims in the present dispute. *See **Transcor Astra Group S.A.***, 650 S.W.3d at 475. Therefore, the circumstances and nature of the parties' settlement discussions demonstrate that the parties considered the consequences of the reliance-disclaimer in light of the allegations regarding Heston as a "troubled child," Kacie's testimony to the contrary, and the Averys' responsibility for providing him with a dangerous instrumentality. As such we further conclude that an all-embracing disclaimer of any representations, in fact, shows the parties' clear intent. *See **id.***

In sum, the evidence offered in support of the Averys' motion for summary judgment conclusively proves their entitlement to judgment as a matter of law and Appellants' assertions that there exists a material fact issue regarding whether, during settlement negotiations, the parties specifically discussed the current matter of dispute are unfounded. Accordingly, having considered this evidence in the light most favorable to the nonmovant, while indulging every reasonable

---

*See **De La Rosa***, 2023 WL 7178022, at *6. Not only does this specific statement from Appellants' counsel stem from the wrongful death case from which these proceedings arose, but it also was presented to the trial court by both parties in the underlying summary judgment record by way of a copy of this court's opinion from Appellant's appeal of the trial court's granting summary judgment in Robert's favor. *See **id.*** at *6–7 (concluding that, during negotiations, this statement amounted to a specific discussion of the current matter of dispute). We conclude that the totality of the circumstances surrounding Appellants' settlement negotiations with the Averys indicate that the allegation of Heston as a "troubled child" was rooted in the fact that he was a resident at Miracle Farm, and that this "material issue" to their wrongful death cause of action very much was at the forefront of Appellants' thought processes during settlement negotiations. *See **Transcor Astra Group S.A. v. Petrobras Am. Inc.***, 650 S.W.3d 462, 475 (Tex. 2022); *see also* **Forest Oil Corp. v. McAllen**, 268 S.W.3d 51, 60 (Tex. 2008).

Additionally, the appendix to Appellants' brief contains a hearing transcript from Washington County, Texas, in which, according to Appellants, "[Robert] Avery's counsel admitted that there were no settlement discussions between him and Appellants' counsel." This hearing occurred months after Appellants' appeal to this court related to their dispute with Robert, and the hearing transcript was not part of the record in that appeal and is not part of the appellate record in this appeal. We will not consider evidence in an appendix to a party's brief, which is not otherwise part of the record on appeal. *See **Johnson v. Pope***, No. 12-23-00168-CV, 2024 WL 3439782, at *1 n.2 (Tex. App.–Tyler July 17, 2024, no pet. h.) (mem. op.); ***De La Rosa***, 2023 WL 7178022, at *7 n.5; ***Burke v. Ins. Auto Auctions Corp.***, 169 S.W.3d 771, 775 (Tex. App.–Dallas 2005, pet. denied) (appellate court cannot consider documents found only in appendix to party's brief).

9

inference and resolving any doubts against the motion, we hold that the trial court did not err in granting summary judgment in the Averys' favor based on a valid, written release of liability. *See* TEX. R. CIV. P. 166a(c). Appellants' sole issue is overruled.

## DISPOSITION

Having overruled Appellants' sole issue, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 29, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2024**

**NO. 12-24-00111-CV**

**REBECCA DE LA ROSA AND CESAR DE LA ROSA,**
Appellants
V.
**JASON MATTHEW AVERY AND WIFE, KACIE HOPE AVERY,**
Appellees

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 20CV35415-B)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, Rebecca De La Rosa and Cesar De La Rosa for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*